UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x

RAMON PONS,                                           :
                                                     :
                                    Plaintiff,       :
                                                     :
                    v.                               :          3:24-CV-1029 (SFR)
                                                     :
UNITED PARCEL SERVICES, INC.,                        :
                                                     :
                                    Defendant.       :
------------------------------------------------------------------ x

## MEMORANDUM & ORDER

In a five-count Complaint against Defendant United Parcel Service, Inc. ("UPS"), Ramon Pons ("Pons") alleges he was improperly fired without progressive discipline in violation of Connecticut public policy and contrary to promises and statements of fact made by UPS. UPS filed a Motion for Summary Judgement, ECF No. 20, arguing that Pons was employed at will and his termination was proper. For the following reasons, I grant UPS' Motion for Summary Judgment.

## I.    BACKGROUND

### A.    Factual Background

The following facts are undisputed unless otherwise noted.[1] Pons was hired by UPS on August 5, 2021. Pl.'s L.R. 56(a)(2) St. ¶ 1. UPS is a global logistics company. *Id.* ¶ 4.

---

[1] The factual background is drawn primarily from facts admitted in Pons' Local Rule 56(a)(2) Statement of Facts submitted in response to UPS' Motion for Summary Judgment, ECF No. 30 ("Pls.' L.R. 56(a)2 St."), and various exhibits attached to these statements. Citations to the Rule 56(a)2 Statements are by paragraph number. With respect to other documents, page citations are to the page number generated by the ECF system.

UPS maintains various employment polices regarding employee conduct that are contained in UPS' Employee Reference Guide ("Reference Guide"), Code of Business Conduct, and Policy Book. *Id.* ¶¶ 9, 17, 21.

The Reference Guide, which applies to non-union employees, contains an unsigned acknowledgment of at-will employment. *Id.* ¶¶ 7, 9.  The Reference Guide states on the preface page: "[N]either this Guide nor any other company document confers any contractual right, either express or implied, to continue to employ you at UPS. Nor does it guarantee any fixed terms and conditions of your employment. Your employment is not for any specific time and may be terminated at will, with or without cause and without prior notice, by UPS or you may resign for any reason at any time." *Id.* ¶ 10. The preface page states that it "is not a contract of employment and does not guarantee employment for any particular period of time or otherwise create any rights as an employee of UPS." *Id.* ¶ 11.

As set forth in the Reference Guide, UPS maintains an equal opportunity policy which provides that harassment, whether intentional or unintentional, will result in disciplinary action up to and including termination. *Id.* ¶ 12. The Reference Guide states that "derogatory or other inappropriate remarks, slurs, threats, or jokes will not be tolerated." ECF No. 22-3, at 44. Further, UPS "will not tolerate harassment of any employee," and "[a]ny employee who violates this policy may be subject to termination or other disciplinary action." *Id.* The Reference Guide states that employees who engage in forms of "illegal employment discrimination" will be subject to "disciplinary action, which could include termination of employment without prior notice." *Id.* at 49. UPS prohibits retaliation against employees who report threats. Pl.'s L.R. 56(a)(2) St. ¶ 16.

2

The Code of Business Conduct, which applies to employees, expressly states that it "is not an express or implied contract of employment and does not create any contractual rights of any kind between UPS and its employees." *Id.* ¶ 19.[2]

The Policy Book applies to UPS employees, *id.* ¶ 21, and explicitly states that it "is not a contract of employment and does not guarantee employment for any particular period of time or otherwise create any right as an employee of UPS." ECF No. 22-5, at 4.

Gabrielle Dunn ("Dunn") was a part-time supervisor at UPS at certain times during Pons' employment. Pl.'s L.R. 56(a)(2) ¶ 5. On August 11, 2023, Pons submitted an ethics concern to UPS' internal ethics line alleging that Dunn had made threatening comments to him. *Id.* ¶ 30. Security Supervisors David Byrnes and Joseph Diana investigated Pons' August 2023 ethics concern. *Id.* ¶ 31. During the August 2023 ethics investigation, Pons alleged that sometime in 2022, Dunn was discussing living in a dangerous neighborhood with a coworker when Pons interjected to ask her if she had ever been shot. *Id.* ¶ 32. Pons alleged that Dunn responded by telling Pons she would "catch [Pons] in the parking lot." *Id.* Pons also alleged that in July 2023 Dunn told Pons to "mind his business" after Pons told Dunn not to speak crassly to a fellow supervisor. Pons claims he told Dunn not to get hostile, to which Dunn said "shut the fuck up, [n-word]." *Id.* ¶ 34. Pons claims he then objected to Dunn using the n-word, to which she stated "catch me in the parking lot." *Id.* In addition, Pons alleged that on August 11, 2023 he and Dunn had a verbal exchange when Dunn told him to "catch me in the parking lot." *Id.* ¶ 36.[3]

---

[2] Pons denies this is a proper disclaimer. *Id.*

[3] Pons says that Dunn again called him the n-word during this interaction. Pl.'s L.R. 56(a)(2) ¶ 36.

Dunn was terminated on September 26, 2023, for violating UPS policy based on substantiated findings from Pons' August 2023 ethics concern. *Id.* ¶ 39. Dunn was found to have violated UPS' Professional Conduct and Anti-Harassment policy, in part, for her use of racial language. *Id.* ¶ 40.

On October 2, 2023, Dunn submitted an ethics concern for wrongful termination, in which she alleged that she was terminated for using the "n-word" but complained that Pons was not terminated despite also using the n-word at work. *Id.* ¶ 41. Security Supervisor David Byrnes investigated Dunn's October 2023 ethics concern. *Id.* ¶ 42. Dunn submitted a written statement as part of the October 2023 ethics investigation, in which she indicated that Pons used the n-word in the breakroom. *Id.* ¶ 43.

On October 4, 2023, Pons was interviewed as part of UPS' investigation into Dunn's ethics concern, and he submitted a written statement in which he admitted to using the n-word "when speaking to two part-time Supervisors that I consider friends outside of UPS." *Id.* ¶ 44. Pons asserts that he did not admit to using the "n-word" while at work. *Id.* In his deposition, Pons was asked "Would you use it [the n-word] when talking to them [the supervisors] at work?" Pons answered, "It doesn't say that I used it at work, but I could see how that could be misinterpreted." Pons Dep., ECF No. 22-1, at 52: 5-11. The parties agree that using the n-word is a violation of UPS policy. Pl.'s L.R. 56(a)(2) St. ¶ 47. David Byrnes, who conducted the investigation, interpreted Pons's written statement as an admission that he used the n-word when talking to fellow supervisors at work and concluded that Pons had violated UPS' Professional Conduct and Anti-Harassment policy. *Id.* ¶ 46. Manager Jeremy Helms reviewed the investigative findings and recommended Pons be terminated. *Id.* ¶ 49. Pons was terminated in November 2023. *Id.* ¶ 50.

Pons asserts that at the time he was fired, Wayne Weihman informed him that he was discharged due to "an altercation" with the coworker he had complained about, and Weihman did not inform him he was being fired based on use of the n-word. Pons Dep. 65, ECF No. 22-1; Pons Aff. ¶ 22, ECF No. 28.

Pons' belief that UPS requires progressive discipline prior to termination is based on supervisor meetings wherein managers indicated that supervisors needed to be written up. Pl.'s L.R. 56(a)(2) St. ¶ 52. Pons did not have any signed agreement or contract for employment with UPS. *Id.* ¶ 56.

### B.    Procedural History

On September 9, 2025, Pons filed a complaint against UPS in Connecticut Superior Court, Judicial District of Bridgeport. Compl., ECF No. 1-1. On June 12, 2024, UPS removed the case to this Court by filing a Notice of Removal. ECF No. 1. On June 11, 2025, UPS filed a Motion for Summary Judgment, ECF No. 20, and accompanying Memorandum of Law ("Def.'s Mem."), ECF No. 21. On September 10, 2025, Pons filed his Response to the Motion for Summary Judgment ("Pl.'s Mem."). ECF No. 27. On October 3, 2025, UPS filed its Reply ("Def.'s Reply"). ECF No. 33.

## II.    LEGAL STANDARD

A motion for summary judgment must be granted if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the non-moving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

When deciding a motion for summary judgment, I may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). In reviewing the record, I must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.    <u>DISCUSSION</u>

Count I alleges a claim for wrongful discharge in violation of public policy, Count II a claim for breach of contract, Count III a claim for a breach of the implied covenant of good faith and fair dealing, Count IV a claim for negligent misrepresentation, and Count V a claim for promissory estoppel. I examine each Count in turn.

### A.    Count I: Discharge in Violation of Public Policy

Count I alleges that Pons was wrongfully discharged in violation of public policy, reflected by Conn. Gen. Stat. § 31-49, because his "wrongful discharge was a direct result of the Defendant's failure to provide the Plaintiff with a safe place in which to work." Compl. 3-4.[4] According to Pons, UPS had a duty to ensure its workplace was free of the type of threatening behavior Pons faced and he was discharged in retaliation for his complaints about Dunn. Pl.'s Mem. 14. UPS argues that Pons was properly discharged because of ethics concerns over his use of the n-word. Def.'s Mem. 11. I conclude that UPS is entitled to summary judgment on this claim because Pons has not pointed to facts supporting a violation of Conn. Gen. Stat. § 31-49.

Although contracts for permanent employment are generally "terminable at will" under Connecticut law, "public policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474, 476 (1980). Thus, a common law cause of action for wrongful termination may be maintained where "the former employee can prove a demonstrably improper reason for

---

[4] Although the Complaint includes paragraph numbers, it repeats the same paragraph number multiple times. Therefore, I cite to the Complaint, ECF No. 1-1, by the page numbers generated by the ECF system.

dismissal, a reason whose impropriety is derived from some important violation of public policy." *Id.* at 475, 480. This exception applies regardless of whether the termination is express or constructive. *Sophia v. City of Danbury*, 116 Conn. App. 68, 74-75 & n.10 (2009). It is, however, a decidedly narrow exception. *See Parsons v. United Technologies Corp.*, 243 Conn. 66, 79 (1997).

"In evaluating claims, [courts] look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether his alleged that his dismissal contravened any judicially conceived notion of public policy." *Id.* at 77 (internal quotation marks omitted). Here, Pons' wrongful discharge claim is based upon an alleged violation of Conn. Gen. Stat. § 31-49, which provides:

> It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master.

Conn. Gen. Stat. § 31-49. In *Parsons*, the Connecticut Supreme Court observed that this provision "reflect[s] a broad legislative concern for the physical welfare and safety of Connecticut employees." *Parsons*, 243 Conn. at 80. The Court thus held that:

> [T]he mandate of public policy that [section 31-49] embod[ies] gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is [(1)] discharged [(2)] for refusing to work [(3)] under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties.

*Parsons*, 243 Conn. at 80.

8

I conclude that Pons cannot meet this standard because there is no evidence that he ever refused to work at UPS or was fired for refusing to work in unsafe work conditions.

Neither party disputes Pons was discharged, satisfying the first requirement of the statute. UPS maintains Pons has failed to establish that his workplace actually posed a substantial risk of serious physical harm. Def.'s Mem. 10; Def.'s Reply 2-4. For the sake of argument, however, I will assume that Dunn's comments and threats satisfy the third requirement under § 31-49 and Pons worked in conditions that posed a substantial risk of serious physical harm.

There is still no evidence, however, that Pons refused to work in such an environment, and thus, that he could have been fired for refusing to do so. It is undisputed that Pons submitted ethics concerns to UPS alleging Dunn made threatening comments to him. Pl.'s L.R. 56(a)(2) St. ¶ 30. It is also undisputed, however, that UPS terminated Dunn on September 26, 2023. *Id.* ¶ 39. Even if I assume that Dunn created an unsafe work environment for Phillips, the danger ended with her termination. Thereafter, he continued to work at UPS. Thus, he did not refuse to work in an allegedly unsafe environment. Only after Dunn submitted an ethics concern of her own on October 4, 2023, did UPS investigate Pons and eventually terminate him as well. *Id.* ¶ 44. Even if UPS did terminate Pons in retaliation for reporting Dunn, as Pons argues, Pl.'s Mem. 12, that still does not mean Pons refused to work with Dunn.

In a case involving similar circumstances, the Connecticut Superior Court granted a motion to strike the plaintiff's claims under § 31-49. The court reasoned:

> However, the allegations in this matter are factually distinguishable from *Parsons*. There, an employee of Sikorsky aircraft was terminated for refusing to be sent to a military staging area in Bahrain during "Operation Desert Storm," which he perceived as a real threat to his health, safety and welfare. Here, the plaintiff alleges that he was terminated after he was repeatedly threatened with

physical violence by his co-worker. He claims his termination was wrongful after complaining to his supervisors regarding the co-worker's threats of physical violence. Unlike *Parsons*, nowhere in this matter is it alleged that the plaintiff refused to work under those dangerous conditions, and was discharged as a result.

*Perez v. Bridgeport Hosp.*, No. CV126009423S, 2012 WL 3667052, at *2 (Conn. Super. Ct. Aug. 3, 2012); *see also Algarin v. LB & O, LLC*, No. FBTCV166060589, 2017 WL 3879306, at *5 (Conn. Super. Ct. July 19, 2017) ("Looking to *Parsons*, Superior Court decisions have distinguished between instances where a plaintiff alleges that his discharge arose from his employer's failure to maintain a safe workplace from instances where a plaintiff alleges that he was discharged for refusing to work in an unsafe environment.") (citing *Perez*, 2012 WL 3667052). Thus, Pons has failed to point to facts from which a reasonable juror could conclude that he refused to work in an unsafe work environment. He therefore cannot maintain a claim for wrongful discharge under *Parsons* and § 31-49 on this basis.

In addition, to the extent that Pons alleges his termination violated public policy because he was fired in retaliation for his complaint regarding Dunn, I conclude Pons has failed to present evidence that would permit a reasonable juror to find that his termination was motivated by retaliatory animus.[5] Pons asserts that he was "retaliated against by [Dunn] and the Defendant retaliated against" him by discharging him. Pl.'s Mem. 12. However, as UPS observes, Pons has not presented any evidence to dispute that Helm recommended Pons for termination based on a determination that Pons used the n-word at work. Def.'s Mem. 6.

---

[5] Some courts have suggested that a cause of action may exist under Connecticut law for wrongful discharge in violation of public policy where "an employee is fired after complaining about having to work" in hazardous work conditions. *See Ferrer v. T.L. Cannon Mgmt. Corp.*, No. 3:08-CV-1040(RNC), 2009 WL 581607, at *1-2 (D. Conn. Mar. 6, 2009); *accord* Slattery v. RELX, Inc., No. 3:20-CV-00774 (JCH), 2021 WL 8314392, at *6 (D. Conn. Feb. 10, 2021).

Moreover, Pons has not presented any evidence that Helm (or any other individual involved in the decision to fire Pons) was motivated by retaliatory animus. At his deposition, when asked for evidence to support retaliation, Pons said he was told by Weihman that he was being terminated for "an altercation" with another supervisor and he was "terminated shortly after" his complaint against Dunn. Pons Dep. 65: 4-5; *id.* at 62: 13. It may be that Pons' altercation with Dunn set in motion a chain of events that ultimately led to Pons's termination as Dunn may have complained about Pons's use of the n-word only because Pons's complaint got her fired. But a reasonable juror could not infer that Pons was fired in *retaliation* for Dunn's complaint when in fact UPS fired *Dunn* as a result of Pons's complaint, and Pons was fired three months after his third complaint against Dunn, and only after an investigation regarding Pons's own use of the n-word. Accordingly, even assuming a cause of action may exist under Conn. Gen. Stat. § 31-49 where an employee is fired in retaliation for complaining about having to work in hazardous conditions, the facts in the record do not support liability for UPS on that basis here.

Accordingly, I grant UPS' Motion for Summary Judgment as to Count I of the Complaint.

### B.    Count II: Breach of Contract

Count II alleges that UPS had a contractual obligation to provide Pons with progressive discipline and workplace safety. Compl. 4-6.

"[A]ll employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 532 (1999) (internal quotation marks and citations

omitted). In Connecticut, it is the general rule that "contracts of permanent employment, or for an indefinite term, are terminable at will." *Sheets*, 179 Conn. at 474. This general rule "can be modified by an agreement of the parties." *Schermerhorn v. Mobil Chem. Co.*, No. 3:99 CV 941(GLG), 2001 WL 50534, at *4 (D. Conn. Jan. 9, 2001). To show that an employer and an employee agreed to modify an at-will employment relationship, "a plaintiff must prove that the employer had agreed, either by words or action or conduct, to undertake some form of actual contractual commitment" inconsistent with the at-will relationship. *Id.*

### 1.    Employee Reference Guide and Code of Business Conduct

UPS argues that its Employee Reference Guide and Code of Business Conduct disclaimed any contractual obligations. Def.'s Mem. 6-7. Pons contends that the disclaimers were not sufficiently clear. Pl.'s Mem. 18. I agree with UPS that it sufficiently disclaimed any contractual obligations in its company handbooks.

"Although representations in an employee handbook may under certain circumstances give rise to an express or implied contract between an employer and employee," that is not the case where the handbook "contain[s] an explicit disclaimer" that is "clear and unequivocal." *Cardona v. Aetna Life & Cas.*, No. 3:96-CV-1009, 1998 WL 246634, at *5 (D. Conn. May 8, 1998); *see also Davis v. Liberty Mut. Ins. Co.*, 218 F. Supp. 2d 256, 261 (D. Conn. 2002) (finding a disclaimer clear and unequivocal where it was on the first page of the handbook even without a "disclaimer" label).

It is undisputed that the Reference Guide contains express language on the preface page stating that "neither this Guide nor any other company document confers any contractual right, either express or implied, to continue to employ you at UPS. Nor does it guarantee any fixed terms and conditions of your employment. Your employment is not for any specific time and

may be terminated at will, with or without cause and without prior notice, by UPS or you may resign for any reason at any time." Pl.'s L.R. 56(a)(2) St. ¶ 10; *see also* ECF No. 22-3, at 2.

Pons, however, points to the Code of Business Conduct which promises employees a safe working environment. Pl.'s Mem. 14; *see also* ECF No. 22-4, Code of Business Conduct, at UPS-Pons_000390.[6]

However, the Code of Business Conduct itself also includes an express disclaimer. "The Code of Business Conduct is not an express or implied contract of employment and does not create any contractual rights of any kind between UPS and its employees . . . ." ECF No. 22-4, UPS-Pons_000417. Pons argues that this disclaimer page is insufficient because it appears "at the bottom of an unsigned page." Pl.'s Mem. 18. But the location is hardly hidden in an obscure spot but instead printed on the back cover of the booklet, visible without even having to open the Code. ECF No. 22-4, UPS-Pons_000417. Courts applying Connecticut law have consistently found similar disclaimers sufficient. For example, the statement "an employee may end employment at any time for any reason, with or without notice, and  the Company similarly may dismiss an employee at any time with or without cause or notice," sufficed as a disclaimer. *Davis*, 218 F. Supp. 2d at 259. The express disclaimer visible on the back of the Code of Business Conduct is no less clear.

Finally, the Code of Business Conduct states in its Preface, on the first page of text, that the "*Code* and the *UPS Policy Book ("Policy Book")* are complementary documents." ECF No. 22-5, at 4. The Policy Book states in its Preface that it "is not a contract of

---

[6] ECF did not generate page numbers for much of the Code of Business Conduct that appears at ECF 22-4. Therefore, I have used the page numbers superimposed at the bottom of each page, UPS-Pons_###.

employment and does not guarantee employment for any particular period of time or otherwise create any right as an employee of UPS." *Id.*

Therefore, there is no genuine dispute of material fact that UPS disclaimed any contractual obligations in its Reference Guide, Business Code of Conduct, and Policy Guide.

### 2.    Manager's Statements

Pons also argues that the Defendant created an implied contract requiring progressive discipline through its practice of using progressive discipline and verbalization of such policy by supervisors. Pl.'s Mem. 21-22. UPS contends that there is no evidence showing such actions by its supervisors, and that even if there were, such actions do not suffice to establish a contract. Def.'s Mem. 7-8.

To prevail, Pons must demonstrate an actual agreement by the defendant use progressive discipline. "A contract implied in fact, like an express contract, depends on actual agreement. *D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 211 n.2, (1987); *Therrien v. Safeguard Mfg. Co.*, 180 Conn. 91, 94 (1980); *Brighenti v. New Britain Shirt Corporation*, 167 Conn. 403, 406 (1974). "To survive a motion for summary judgment, the plaintiff had the burden of presenting evidence that the defendant had agreed to some form of contract commitment." *Reynolds v. Chrysler First Com. Corp.*, 40 Conn. App. 725 (1996). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." *Christensen v. Bic Corp.*, 18 Conn. App. 451, 458 (1989). "The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." *Id.* at 458 (citing *Brighenti v. New Britain Shirt Corp.*, 167 Conn. 403, 407 (1974)).

14

Pons claims that UPS supervisors "explained that a progressive disciplinary policy should be used for employee discipline." Pl.'s Mem. 21. In Pons' deposition, he testified that at meetings, the full-time supervisor "would sit down and talk about these write-ups that he expected from part-time supervisors who weren't performing in a certain way." Pl.'s Dep., ECF No. 22-1, at 67:17-19. When asked in regard to the full time supervisor, "Did he specifically say we won't fire anyone until they've gotten a write-up?" Pons responded "No. What would be the purpose of going through a write-up process if there wasn't a progressive disciplinary plan?" *Id.* at 67:24-68:3. In an affidavit submitted alongside his Response Brief, Pons further added, that "at the supervisors' meetings . . . it was represented that a progressive disciplinary policy should be used in disciplining employees." Pons Aff. ¶ 29, ECF No. 28. In addition, "employees of the Defendant, including me, are made aware of the progressive policy discipline through conversations with their supervisors." *Id.* ¶ 30. UPS argues that this affidavit should be dismissed according to the sham affidavit doctrine because it conflicts with Pons' deposition testimony.[7] Def.'s Reply 10.

Even if I were to assume events transpired as outlined in the affidavit, these facts still do not provide evidence of an implied contract. An implied contract depends on "actual agreement." *D'Ulisse-Cupo*, 202 Conn. at 211 n.2. Pons has not presented evidence that he and UPS came to an agreement that required progressive discipline prior to termination.

---

[7] Under the sham affidavit doctrine, "'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). "[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970 (RWS), 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007).

Instead, Pons alleges that he believed a progressive discipline policy should be used. His belief does not create a contract. "The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." *Christensen*, 18 Conn. App. at 458 (citing *Brighenti*, 167 Conn. at 407). There is no evidence that UPS intended to be bound in all cases to provide progressive discipline. There is no evidence UPS promised it would adhere to progressive discipline in all cases, and all its handbooks explicitly disclaim any obligation.

Even accepting the affidavit's assertion that UPS utilized progressive discipline, such evidence still does not establish that UPS had entered into an implied contract binding it to its use in all cases. "[C]ontracts are not created by evidence of customs and usage." *Christensen*, 18 Conn. App. at 456; *see L.F. Pace & Sons, Inc. v. Travelers Indemnity Co.*, 9 Conn. App. 30, 38 (1986). Therefore, I do not find any genuine dispute of material fact as to whether UPS was bound by a contract with Pons to provide progressive discipline. Thus, I grant UPS' Motion for Summary Judgment as to Count II.

### C.    Count III: Implied Covenant of Good Faith and Fair Dealing

Count III alleges that UPS violated the covenant of good faith and fair dealings in its termination of Pons without progressive discipline. Compl. 6-7. "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Landry v. Spitz*, 102 Conn. App. 34, 42 (2007) (internal quotation marks omitted).

UPS argues that this covenant of implied good faith is coextensive with the common law cause of action for wrongful discharge. Def.'s Mem. 12. Pons argues instead that it

depends upon the fact that "the Plaintiff has sufficiently alleged an express or implied Contract existed." Def.'s Mem. 23. Either way, since I have granted UPS' Motion for Summary Judgment as to both Counts I and II, Pons fails to state a claim for violation of the implied covenant of good faith and fair dealing. Thus, I grant UPS' Motion for Summary Judgment as to Count III as well.

### D.   Count IV: Negligent Misrepresentation

Count IV alleges that UPS negligently misrepresented the existence of a progressive discipline policy and that Pons would only be terminated in accordance with that policy. Compl. 7. UPS argues that it never made any misrepresentation of fact about a progressive discipline policy and that no evidence supports the proposition that Pons detrimentally relied upon any misrepresentation. Def.'s Mem. 12. Pons responds that he did detrimentally rely upon UPS' statement of fact that it would employ a progressive discipline policy. Pl.'s Mem. 24-25. I agree with UPS that it did not make a negligent misstatement of fact.

In Connecticut, a negligent misrepresentation claim requires a plaintiff to establish "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami v. Patrons Mutual Ins. Co.*, 280 Conn. 619, 626 (2006). To survive summary judgment, a plaintiff must be able to point to evidence indicating that the speaker of the misrepresentation "knew, or should have known, [the] statements were untrue *at the time they were made*." *Bellsite Dev, LLC v. Town of Monroe*, 155 Conn. App. 131, 152 (2015) (emphasis in original). "[T]he plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information." *D'Ulisse-Cupo*, 202 Conn. at 218 (1987).

Pons points to the statements made by supervisors as the basis for the misrepresentation of fact. In his affidavit, Pons reports that at the supervisors' meetings, "it was explained by the Defendant's full-time supervisors that a progressive disciplinary policy should be used in disciplining employees." Pl.'s Aff. ¶ 28. Pons states: "The employees of the Defendant, including me, are made aware of the progressive disciplinary policy through conversations with their supervisors." *Id.* ¶ 30. In his deposition Pons testified more specifically that the full-time supervisor would "talk about these write-ups that he expected from part-time supervisors who weren't performing in a certain way." Pl.'s Dep. 67: 18-19.

These alleged statements by the UPS supervisors, however, are not statements of a fact that UPS would apply the progressive discipline policy to every employee in every situation. Even interpreting the statements of UPS' full-time supervisors as construed by Pons, the UPS full-time supervisors merely said that a progressive policy "should be used," not that it must be used. For purposes of a claim of negligent misrepresentation of fact, a statement that something *should* be done differs from a statement that something *would* be done. *See Garcia v. Altice Tech. Servs,*, LLC, No. 3:21-CV-00522 (JAM), 2023 WL 22495, at * 7 (D. Conn. Jan. 3, 2023) (granting summary judgment to defendant because the record was "devoid of any evidence that [defendant] made any kind of written or oral representation to [plaintiff] that it had [a progressive discipline] policy or that it *would* apply any progressive discipline policy or practice to him") (emphasis added); *see also Goncalves v. Superior Plating Co.*, No. CV085015711, 2010 WL 3964659, at *2 (Conn. Super. Ct. Sept. 9, 2010) (concluding that negligent misrepresentation claim was sufficient to survive summary judgment where "defendant's plant manager orally informed him that he *would* have a secure job, and he *would*

18

*not* be fired except for just cause" but nonetheless granting summary judgment to defendant on statute of limitations grounds) (emphasis added).

Moreover, the assertions that there was a progressive disciplinary process also do not amount to a statement of fact that Pons would be entitled to such a process. The UPS' Reference Guide states that "employment is not for any specific time and may be terminated at will, with or without cause and without prior notice, by UPS or I may resign for any reason any time." ECF No. 22-3, at 60. Even Pons himself admitted that UPS could fire employees without offering progressive discipline. In his deposition, while discussing the steps of progressive discipline, Pons was asked: "Would you agree that there is potentially conduct that would warrant termination without these initial steps." Pons answered" "Absolutely." Pons Dep., ECF No. 22-1, at 26: 13-16.

UPS' Employee handbook says that violating its standards of conduct can "will not be tolerated and will result in disciplinary action, which could include termination of employment without prior notice." ECF No. 22-3, at 49. The list, which "is not intended to be exhaustive", includes "discrimination." *Id.* Use of "derogatory slurs or remarks," meanwhile, can result in "termination *or* other disciplinary action." *Id.* at 44. Pons was well warned that use of the n-word, a discriminatory and derogatory epithet, could result in termination without prior disciplinary action.

That UPS referenced the possibility of disciplinary action also does not amount to a misrepresentation of fact, especially when put in context with all its statements proclaiming Pons' employment at-will and disclaiming any obligation to provide progressive discipline. In his deposition, Pons was shown a copy of UPS' Employee handbook and read the passage that said "Your employment is not for any specific time and may be terminated at will with or

19

without cause and without prior notice." Pons Dep, ECF No. 22-1, at 27: 22-25. When asked "Were you aware that they had this policy during your employment?" Pons responded "Yes." *Id.* at 28: 19-21. Pons cannot establish a claim of misrepresentation of fact merely because he also heard statements about progressive discipline. *See Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 309 (D. Conn. 2000) (ruling in favor of defendant on summary judgment because "plaintiff was not justified in relying on any alleged claim of job security or termination for just cause in light of the plain and repeated statements of at-will employment contained in the Company's employment application, offer letter and employment handbooks"); *see also Mumma v. Pathway Vet All., LLC*, 648 F. Supp. 3d 373, 397 (D. Conn. 2023) (granting summary judgment to defendant on claim of misrepresentation of fact because plaintiff has been "expressly advised that she was an at will employee and . . . knew that to be the case").

A company that uses progressive discipline for some employees, and discusses that preference, is not obligated to use progressive discipline for all employees. If the comments regarding write-ups were actionable, then no company could maintain at-will employment while also performing any write-ups on underperforming employees or other disciplinary actions that fell short of termination. Accordingly, I grant UPS' motion for summary judgment as to Count IV.

### E.    Count V: Promissory Estoppel

Count V asserts a claim of promissory estoppel, alleging that Pons relied upon UPS' promises that he would not be fired without progressive discipline. Compl. 8-9. UPS argues that Pons has failed to demonstrate a clear and definite promise of progressive discipline. Def.'s Mem. 14. Pons contends that there remains a dispute of material fact as to whether the

20

representations made by UPS were sufficiently clear and concise to create a promise. Pl.'s Mem. 32. I agree with UPS that there was no clear and definite promise made.

Connecticut recognizes a cause of action for promissory estoppel which "permits recovery based on a sufficiently clear and definite promise, even in the absence of the consideration required to create a contract." *Cweklinsky v. Movil Chemical Co.*, 364 F.3d 68, 77 (2d Cir. 2004) (citing *D'Ulisse-Cupo*, 202 Conn. 206 at 221). Promissory estoppel is

> predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.

*Connecticut Nat'l Bank v. Voog*, 233 Conn. 352, 366 (1995) (citations and internal quotation marks omitted). Although promissory estoppel claims sound in contract, the promise upon which the promisee relies need not be as "specific and definite [as] an offer to enter into a contract," and "a promise need not be the functional equivalent of an offer to enter into a contract." *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 110 (2003). "An employer's promise to follow a system of progressive discipline may be clear and definite enough to support an action for promissory estoppel." *Dancho v. Bridgeport Hosp.*, No. CV93 0302790, 1994 WL 685026, at \*2 (Conn. Super. Ct. Nov. 29, 1994). "[W]hether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made." *Stewart*, 267 Conn. at 106.

As I discussed above, UPS never made a clear and definite statement that Pons would be entitled to progressive discipline. Even accepting as true Pons' Affidavit and drawing all inferences in his favor, UPS merely said that progressive discipline "should be used for

21

employee discipline." Pl.'s Aff. ¶ 28. That does not rise to the level of a definite promise. "[A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance, and, therefore, is not sufficiently promissory. The requirements of clarity and definiteness are the determinative factors in deciding whether the statements are indeed expressions of commitment as opposed to expressions of intention, hope, desire or opinion." *Stewart*, 267 Conn. at 106 (internal quotation marks and citations omitted); *see also Goncalves*, 2010 WL 3964659, at * 5 ("Rolf's alleged representations to the plaintiff do not invoke a cause of action for promissory estoppel because they are neither sufficiently promissory nor sufficiently definite to support contractual liability. The statements were, on their face, no more than representations indicating that the defendant intended to continue providing employment to the plaintiff in the future."). Accordingly, I grant Defendant's Motion for Summary Judgement as to Count V.

## IV.    CONCLUSION

For these reasons, I grant UPS' Motion for Summary Judgment as to all counts. The Clerk of the Court is respectfully directed to enter judgment in UPS's favor and close the case.

**SO ORDERED.**

New Haven, Connecticut
July 16, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

22